Suzanne Bostrom (AK Bar No. 1011068)
Brook Brisson (AK Bar No. 0905013)
Bridget Psarianos (AK Bar No. 1705025)
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
sbostrom@trustees.org
bbrisson@trustees.org
bpsarianos@trustees.org

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DOUGLAS BURGUM, *et al.*, <br><br> Defendants, <br><br> and <br><br> CONOCOPHILLIPS, ALASKA, INC., *et al.*, <br><br> Intervenor-Defendants. | Case No. 3:26-cv-00078-SLG <br><br> **DECLARATION OF JEFFERY GROENKE** |

I, Jeffery Groenke, hereby declare as follows:

Ex. 6, page 1 of 6

1.      This declaration is in support of Plaintiffs' Motion for Summary Judgment in the above-captioned litigation. I know these facts of my own personal knowledge and would competently testify to them if called as a witness in these proceedings.

2.      I live on the premises of Yukon River Camp at Mile 56 on the Dalton Highway. I am originally from Texas and moved to Yukon River Camp thirteen years ago because I found living in the subarctic along the Yukon River to be a unique and magical place.

3.      I am the Yukon River Camp's site administrator, meaning I manage all the Camp's operations, including hospitality, field services, transportation, and logistics support. My experience is hands on and field based, requiring a deep understanding of Arctic conditions, seasonal access, wildlife presence, and land use constraints. I have also worked in coordination with the Alaska Department of Fish and Game and the Bureau of Land Management (BLM), which has further informed my understanding of wildlife management, habitat sensitivity, and responsible operations in Arctic environments.

4.      I am a member and the President of the Board of Directors of the Northern Alaska Environmental Center (Northern Center). I support Northern Center because I value responsible land management, the protection of Arctic ecosystems, and informed decision making that balances development with long-term environmental sustainability. My direct experience on the ground has shown me how important it is to protect critical habitat while maintaining responsible use of the land. I joined the Board because I

wanted to be a voice advocating for responsible land management and to bring my unique perspective as someone who lives and works in the subarctic to the environmental space.

5.      The National Petroleum Reserve–Alaska (Reserve) is important to me both professionally and personally. As someone who has lived and worked in the region for over a decade, I have seen firsthand how interconnected the land, wildlife, and industrial activity are. The Reserve plays a critical role in supporting wildlife populations that I care about and affects the overall environmental stability of the Arctic, where I live and recreate.

6.      It also directly affects the type and consistency of work available to those of us operating along the Dalton Highway corridor. My work depends on public access, well-managed land use decisions, and responsible development practices. Development at all costs that does not account for long-term sustainability and that limits public access interferes with my work.

7.      I have been in the Reserve and around areas connected to it about four times over the past thirteen years and I plan to keep going back. My first visit was in 2013, and my most recent visit was in 2022. Specifically, I have visited Utquiaġvik for professional reasons, but on these visits, I have also taken personal time to visit the Reserve to observe wildlife, take photos, and hike on the tundra. I enjoy taking landscape photos to capture the astounding beauty of the Reserve as a pristine landscape.

Decl. of Jeffery Groenke                                          Ex. 6, page 3 of 6
*Sovereign Iñupiat for a Living Arctic v. Burgum*,
Case No. 3:26-cv-00078-SLG                                      Page 3 of 8

Case 3:26-cv-00078-SLG    Document 36-7    Filed 05/27/26    Page 3 of 8

8. When viewing the Reserve from a plane, I found the vastness of the Reserve mind-blowing. I appreciate that it is one of the last places on Earth that is largely untrammeled wilderness. I believe that the Reserve should be preserved in this state as a truly wild place because there as so few places like it left.

9. When I visit the Reserve, I particularly enjoy seeing wildlife, specifically caribou, foxes, and migratory birds. One of the most notable experiences was witnessing the large-scale caribou migrations across the Reserve's intact ecosystem. I am interested in birding, and I fondly recall seeing tundra swans. Birding is enjoyable to me because the slow and thoughtful process brings me peace. Birding in the Reserve is especially wonderful because I can be surrounded by the largely untouched landscape. Being in this awe-inspiring landscape and viewing its unique wildlife fills me with a sense of wonder and clarity of mind.

10. I intend to return to Utquiaġvik and the Reserve in August 2026 with a colleague who is an experienced ornithologist. I plan to join my colleague's trip, where he will guide a group of people to camp and view birds in the Reserve. I am excited about the opportunity to go further into the Reserve than I have been before and hopefully see birds I have never seen before.

11. I have closely followed BLM's decisions, including the 2025 Integrated Activity Plan (IAP), the 2026 lease sale, and major development projects such as Willow. I have stayed actively informed due to the direct impact on my work and have engaged in

Decl. of Jeffery Groenke
*Sovereign Iñupiat for a Living Arctic v. Burgum*,
Case No. 3:26-cv-00078-SLG

ongoing discussions with other operators, agencies, and stakeholders about changes in land management decisions and their effects. I am concerned that the 2025 IAP, which opens up most of the Reserve to oil and gas leasing and development, and the 2026 lease sale, which offered up ecologically sensitive areas of the Reserve like Teshekpuk Lake Special Area, will not only have harmful effects on my work but also on the environment and wildlife of the Reserve that I use and value.

12. My use and interest in the Reserve will be harmed if the 2025 IAP and the 2026 lease are allowed to stand. These decisions roll back protections for the Reserve and its Special Areas, which are vitally important for wildlife that I care about, and open up most of the Reserve to oil and gas development, including the Teshekpuk Lake Special Area. While I have not yet visited the Special Areas, such as Teshekpuk Lake, I recreate and live in ecologically connected regions and regularly encounter species—particularly caribou and migratory birds—that depend on and move through those areas and that I enjoy viewing. Allowing additional oil and gas activity in the Reserve, especially in Special Areas that have important environmental, wildlife, and subsistence resources, will degrade the environment, eliminate important habitat, and displace wildlife. If oil and gas leasing and development continue to expand in the Reserve, I will be less likely to use the Reserve, and my enjoyment of the Reserve will be diminished. If wildlife are displaced or harmed and their habitat is degraded, my chances of encountering wildlife and continuing to enjoy those experiences in the Reserve will be harmed. I will be less

Decl. of Jeffery Groenke
*Sovereign Iñupiat for a Living Arctic v. Burgum*,
Case No. 3:26-cv-00078-SLG

Ex. 6, page 5 of 6

Page 5 of 8

likely to see the wildlife I enjoy and less able to derive the psychological benefits I get when I visit the Reserve and view its special wildlife.

13.     I enjoy the Reserve because it is one of the last places left in its natural state. Allowing additional oil and gas leasing and development in the Reserve will industrialize the landscape, causing it to lose its wild qualities that I enjoy. To me, this tradeoff—additional oil and gas activity at the expense of harm to the environment and wildlife—is not worth it. Humans have an innate connection to nature, but by continuing to push extraction opportunities that degrade nature, we become divorced from our human identity. I worry that additional oil and gas development in the Reserve, particularly with the reduced protections under the new IAP, will degrade the Reserve permanently. This would harm me because I recreate in and enjoy the Reserve because of its high-quality environmental value. My future experiences will be diminished by the industrialization, pollution, noise, traffic, and human activity that will be allowed under the new IAP.

14.     Additional oil and gas operations will harm my business by introducing increased environmental risk and operational uncertainty. From my experience, poorly planned oil and gas expansion can disrupt wildlife habitat use, create infrastructure challenges, and lead to shifting regulations that make it difficult to maintain stable business operations. Shifting habitat use will make coordinating logistics and transportation more difficult as wildlife habits change and become unpredictable and are

Decl. of Jeffery Groenke                                          Ex. 6, page 6 of 6
*Sovereign Iñupiat for a Living Arctic v. Burgum*,
Case No. 3:26-cv-00078-SLG                                        Page 6 of 8

Case 3:26-cv-00078-SLG    Document 36-7    Filed 05/27/26    Page 6 of 8

harder to account for and plan around. Continued development without sufficient consideration of cumulative impacts risks long-term environmental degradation, which ultimately affects both ecological health and sustainable economic activity. Inconsistent policy and rapid changes also create operational inefficiencies and increased risk for operators like myself. Because of the back and forth between opening up the Reserve to oil and gas versus emphasizing conservation, I approach business decisions more cautiously, closely monitor regulatory changes, and avoid overcommitting projects that may be impacted by policy uncertainty. Moving forward, if the development at all costs approach implemented by the new IAP is allowed to stand, I will likely limit expansion of my business activities in the Reserve to avoid unnecessary risks and uncertainty that threaten continued business operations.

15.     Opening the Reserve to additional oil and gas leasing and development will mean that I would no longer be able to enjoy the Reserve as a vast, wild landscape. Oil and gas development will damage the tundra, pollute the land, air, and water, and displace the wildlife that I enjoy. A court order reversing BLM's decisions would protect my interests in the Reserve by ensuring that the ecosystems and wildlife that I use and enjoy are protected from oil and gas activity.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12 day of May, 2026 at Yukon River Camp, Alaska.

---

Decl. of Jeffery Groenke
*Sovereign Iñupiat for a Living Arctic v. Burgum,*
Case No. 3:26-cv-00078-SLG

Ex. 6, page 7 of 6
Page 7 of 8

Jeffery Groenke

Case 3:26-cv-00078-SLG    Document 36-7    Filed 05/27/26    Page 8 of 8